# 25-632

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Commodity Futures Trading Commission,

Plaintiff-Appellee,

ABC,

Plaintiff,

v.

Pierre Acluche,

Appellant,

Eddy Alexandre, DEF, EminiFX, Inc.,

Defendants,

United States of America,

Intervenor.

On Appeal from the United States District Court
for the Southern District of New York, No. 22-cv-03822-VEC

## BRIEF FOR APPELLEE

Meghan Tente
 *Acting General Counsel*
Anne Stukes
 *Acting Deputy General Counsel*
Conor Daly
 *Counsel*
Commodity Futures Trading Commission
1155 21ˢᵗ Street, NW
Washington, DC  20581
(202) 834-9752
cdaly@cftc.gov

Dated June 30, 2025

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................1

STATEMENT OF THE ISSUES.......................................................................4

STATEMENT OF THE CASE..........................................................................4

  A.  Eddy Alexandre, EminiFX, Inc., and the Ponzi Scheme ......................... 4

  B.  Procedural History ................................................................................ 6

     1.  Criminal Case against Alexandre ................................................. 6

     2.  The CFTC's Enforcement Action against Alexandre and EminiFX ...........6

     3.  Appointment of the Receiver and Recovery of EminiFX Assets ................7

     4.  Claims Process for Distribution of Receivership Assets .............................9

     5.  Acluche's Attempts to Intervene................................................10

     6.  The Ruling on Review: Acluche's Fifth Attempt to Intervene ...................12

SUMMARY OF THE ARGUMENT ................................................................13

ARGUMENT ................................................................................................13

  I.  Standard of review .............................................................................13

  II.  Acluche did not have a right to intervene in the CFTC's
enforcement action.. .........................................................................14

    A.  Acluche's motion to intervene was not timely...........................................15

    B.  Acluche's interests are adequately represented in the litigation.. ...............18

  III.  Acluche was not entitled to a hearing on his motion to intervene, and the
District Court's analysis of the issue was satisfactory…................................21

CONCLUSION ............................................................................................27

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>CASES</u>

*Avon Nursing and Rehabilitation v. Becerra*,
  119 F.4th 286 (2d Cir. 2024) ..................................................................26

*Bridgeport Guardians, Inc. v. Delmonte*,
  602 F.3d 469 (2d Cir. 2010)....................................................................14

*Briscoe v. City of New Haven*, No. 3:09-CV-1642 (CSH),
  2012 WL 13026762 (D. Conn. Oct. 5, 2012) ........................................14

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001)....................................................................19

*CFTC v. Chilcott Portfolio Management, Inc.*,
  725 F.2d 584 (10th Cir. 1984) .................................................................21

*CFTC v. Heritage Capital Advisory Services, Ltd.*,
  736 F.2d 384 (7th Cir. 1984) ..................................................................21

*Farmland Dairies v. Commissioner of the New York State
  Department of Agriculture and Markets*,
  847 F.2d 1038 (2d Cir. 1988)..................................................................16

*Floyd v. City of New York*,
  770 F.3d 1051 (2d Cir. 2014)..................................................................26

*Iannaccone v. Law*,
  142 F.3d 553 (2d Cir. 1998).....................................................................3

*In re Bank of New York Derivative Litigation*,
  320 F.3d 291 (2d Cir. 2003)..............................................................15, 16

*In re Grand Jury Subpoenas Duces Tecum*,
  798 F.2d 32 (2d Cir. 1986)......................................................................22

*In re Katz*,
  623 F.2d 122 (2d Cir. 1980)..................................................................24, 25

*In re New York City Policing During Summer 2020 Demonstrations*,
  27 F.4th 792 (2d Cir. 2022) ...........................................................................13

*Jones v. Caddo Parish School Board*,
  704 F.2d 206 (5th Cir. 1983) ..........................................................................22

*Jordan v. Mich. Conf. of Teamsters Welfare Fund*,
  207 F.3d 854 (6th Cir. 2000) ..........................................................................19

*Laroe Estates, Inc. v. Town of Chester*,
  828 F.3d 60 (2d Cir. 2016)..............................................................................25

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) ...........................................................................25, 26

*Machadio v. Apfel*,
  276 F.3d 103 (2d Cir. 2002)..............................................................................3

*MasterCard International Inc. v. Visa International Service Association, Inc.*,
  471 F.3d 377 (2d Cir. 2006)............................................................................14

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
  467 F.3d 238 (2d Cir. 2006).............................................................................14

*SEC v. Callahan*,
  193 F. Supp. 3d 177 (E.D.N.Y. 2016) .............................................................20

*SEC v. Charles Plohn & Co.*,
  448 F.2d 546 (2d Cir. 1971)............................................................................21

*SEC v. Everest Management Corp.*,
  475 F.2d 1236 (2d Cir. 1972)..........................................................................19

*Southwest Center for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ..........................................................................22

*United States v. City of New York*,
198 F.3d 360 (2d Cir. 1999)...................................................................19

*United States v. Hooker Chemicals & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984)...................................................................13

*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994).........................................................16, 17, 26

*United States v. Ragonese*,
47 F.4th 106 (2d Cir. 2022) ...................................................................14

S<small>TATUTES</small>

U.S. Code, Title 7
Sections 1-26......................................................................................1
Section 2(a)(1)(A) ..............................................................................1
Section 2(c)(2)(C)(iii)(I)(cc) ..............................................................7
Section 6b(a)(1)..................................................................................7
Section 6b(a)(2)..................................................................................7
Section 6k(2)......................................................................................7
Section 6m(1).....................................................................................7
Section 6*o*(1)(A)..................................................................................7
Section 6*o*(1)(B)..................................................................................7
Section 9(1)....................................................................................6, 7
Section 13a-1(a) .................................................................................1
Section 13(a)(5)..................................................................................6
Section 25...........................................................................................1

U.S. Code, Title 18
Section 2.............................................................................................6
Section 1343.......................................................................................6

O<small>THER</small> A<small>UTHORITIES</small>

17 C.F.R. pts. 1–190 ..............................................................................1

17 C.F.R. § 5.2(b) ...................................................................................7

17 C.F.R. § 5.3(a)(2)(i) ...........................................................................7

v

17 C.F.R. § 5.3(a)(2)(ii) ........................................................................7

17 C.F.R. § 180.1 ..................................................................................6

17 C.F.R. § 180.1(a)(1)-(3) ...................................................................7

Fed. R. Civ. P. 24(a)..............................................................................14

7C Charles Alan Wright & Arthur R. Miller,
  *Federal Practice & Procedure* § 1914 (3d ed. 2024)...........................22

## INTRODUCTION

The Commodity Futures Trading Commission ("CFTC") is a federal agency tasked with administering and enforcing the Commodity Exchange Act ("CEA" or "the Act"), 7 U.S.C. §§ 1–26. The CEA, and the CFTC's regulations implementing the CEA, 17 C.F.R. pts. 1–190, govern markets for commodity derivatives, including futures contracts and swaps, and to a lesser extent, the commodities that underlie them. *See* 7 U.S.C. § 2(a)(1)(A). The CFTC can bring civil-enforcement actions in federal courts to redress violations and enforce compliance with the CEA and CFTC regulations. 7 U.S.C. § 13a-1(a). In addition, the CEA contains a private right of action for CEA violations, 7 U.S.C. § 25.

This case involves a CFTC civil-enforcement action for commodities fraud. Nearly three years after the District Court froze the defendants' assets and appointed a Receiver, and nearly two years after the Receiver liquidated some of the seized assets, a defrauded customer moved to intervene in the enforcement action. This case is an appeal from the District Court's denial of the customer's untimely and unpersuasive motion to intervene in the CFTC action.

On May 11, 2022, the CFTC brought an enforcement action in federal court against Eddy Alexandre and his company EminiFX, Inc. (collectively, "the Defendants") for violations of certain anti-fraud provisions of the CEA and its implementing regulations. The CFTC alleged that the Defendants solicited at least

1

$59 million from the public for the purpose in trading in foreign currency exchange, cryptocurrency, and other assets and guaranteed profits to participants but, in reality, operated a Ponzi-like scheme in which Alexandre misappropriated participant funds to pay other participants or to pay his personal expenses.

On May 12, 2022, the District Court entered a Statutory Restraining Order ("SRO"), which ordered the freezing of the Defendants' assets and appointed a temporary receiver to take exclusive custody and control of the receivership estate. On June 15, 2022, the District Court then entered a Consent Order for Preliminary Injunction, which permanently appointed the Receiver and ordered the Receiver to marshal and collect the Defendant's assets, administer the receivership, and provide periodical reports on his efforts.

In January 2024, appellant Pierre Acluche, a participant in EminiFX, filed a Motion to Intervene on behalf of himself and several other customers, claiming that their interests were not adequately represented based on the Receiver's decision to liquidate the Bitcoin held in the receivership estate. That motion, which Acluche did not appeal, was conclusory and unsupported by any detailed explanation. The District Court denied the motion in February 2024, holding that Acluche's disagreement with the Receiver's strategy for preserving the value of the estate did not show that the CFTC and Receiver inadequately represented the interests of defrauded participants.

2

With the same conclusory arguments, Acluche moved for intervention on behalf of himself and several participants again in May and July 2024, which the District Court also denied. On January 27, 2025, Acluche filed another Motion to Intervene, reiterating the arguments made in the previous motions. On January 30, 2025, the District Court denied that motion.

Acluche appeals only the District Court's denial of the January 27, 2025 Motion to Intervene.[1] Acluche contends that he and a group of EminiFX participants had a right to intervene in the CFTC's enforcement action, but he fails to show how their interests were not already adequately represented or that the appealed motion was timely. Acluche also claims that he was entitled to a hearing on his fourth Motion to Intervene, but caselaw firmly establishes that he was not. Accordingly, the District Court's decision should be affirmed.

---

[1] Acluche is the only signor on the appellant brief but attempts to act on behalf of a group of EminiFX customers who share the same interest, signing on behalf of "EminiFX Investors." Br. 21. However, Acluche can only represent himself on appeal because he is not an attorney who is admitted to practice before this Court. *Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002) ("Litigants in federal court have a statutory right to choose to act as their own counsel . . . However, an individual who is not licensed as an attorney 'may not appear on another person's behalf in the other's cause.'") (quoting *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)). Thus, other claimants, who did not separately appeal, are not properly before this Court.

## STATEMENT OF THE ISSUES

1. Whether the appealed motion to intervene was timely filed, when the District Court had already approved the Receiver's request to expeditiously liquidate the seized cryptocurrency and the Receiver's distribution plan.

2. Whether Acluche's interests were adequately represented by the CFTC and the Receiver in the enforcement action, where the CFTC had filed the enforcement action to recover customers' assets and the Receiver had set up a claims process subject to the District Court's review.

3. Whether Acluche was entitled to a hearing on his fourth attempt to intervene in the CFTC's enforcement action.

## STATEMENT OF THE CASE

### A. Eddy Alexandre, EminiFX, Inc., and the Ponzi Scheme

Eddy Alexandre established and owned EminiFX, Inc. in September 2021, through which he solicited participants for cryptocurrency and foreign currency exchange trading. CSA 125. From the founding of EminiFX to May 2022, Alexandre misappropriated funds received from participants, and he used the misappropriated funds for personal expenditures while falsely representing positive trading returns to customers. Alexandre gave virtual presentations to potential customers touting at least 5% returns each week, which was also reflected on

4

EminiFX's website. CSA 125. As a result, tens of thousands of participants opened accounts at EminiFX and deposited a total of $262,576,962 for Alexandre to invest on their behalf. CSA 84, 125.

Participants in EminiFX would fund their accounts using several methods. They would commonly contribute U.S. dollars directly into EminiFX's bank accounts maintained by TD Bank or Bank of America. CSA 76. Participants would also commonly send funds through the CoinPayments system, in which contributions were made in Bitcoin. CSA 77. EminiFX's CoinPayments account received over $180 million worth of Bitcoin. CSA 77. Almost all participant withdrawals were completed through CoinPayments. CSA 77.

The participants' investments substantially decreased in value from 2021 to 2022. Account values decreased in part due to a declining value in Bitcoin, which accounted for the majority of funds contributed to EminiFX from participants. CSA 79, 126. The accounts lost value in greater part from Alexandre's trading in broad-based index futures such as E-mini S&P 500 futures contracts and in cryptocurrency. CSA 126. Alexandre lost a substantial amount of the funds he had traded. EminiFX lost money trading in 24 of the 30 weeks of its operation, and its most successful week produced only a 2.28% return. CSA 127. Alexandre also transferred over $15 million from an EminiFX bank account to a personal bank account, which he used, among other things, to make cash withdrawals, pay credit

5

card bills, and purchase cars. CSA 126. In total, Defendants lost or spent more than $49 million of participant contributions. CSA 127. Despite the heavy losses, EminiFX's website reported positive returns in line with the 5% weekly gains touted to potential participants and that the total account balances had grown to $548 million. CSA 127, 133.

### B. Procedural History

#### 1. Criminal Case against Alexandre

On May 12, 2022, a criminal complaint was unsealed charging Alexandre with one count of commodities fraud in violation of 7 U.S.C. §§ 9(1), 13(a)(5), 17 C.F.R. § 180.1, and 18 U.S.C. § 2, and one count of wire fraud in violation of 18 U.S.C. §§ 2, 1343. Crim. Dkt. 1. On June 9, 2022, a grand jury in the Southern District of New York ("SDNY") returned an indictment charging Alexandre with the same offenses in the criminal complaint. CSA 127-28. On February 20, 2023, Alexandre pleaded guilty pursuant to a plea agreement in the criminal case. CSA 128. On July 18, 2023, the court sentenced Alexandre to nine years of imprisonment. CSA 128.

#### 2. The CFTC's Enforcement Action against Alexandre and EminiFX

On May 11, 2022, the CFTC filed a Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief ("Complaint") under seal against the Defendants, seeking relief for violations of certain anti-fraud provisions of the

CEA and its implementing regulations, 7 U.S.C. §§ 6b(a)(1)-(2), 6o(1)(A) and (B), 9(1) and 17 C.F.R. §§ 5.2(b), 180.1(a)(1)-(3), and for violations of certain registration provisions of the CEA and its implementing regulations, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), 6m(1), and 17 C.F.R. § 5.3(a)(2)(i),(ii). A50-52. In the Complaint, the CFTC alleged that the Defendants solicited and accepted at least $59 million from the general public, purportedly to trade in foreign currencies, cryptocurrencies, and other assets, and made misrepresentations regarding, among other things, guaranteed 5% weekly profits, the risk of loss, and Alexandre's use of the participants' funds, but in reality, operated a Ponzi-like scheme in which Alexandre distributed some participant funds that were purported as returns while at the same time misappropriating funds for his personal use. A50-51.

Alexandre filed his answer to the Complaint on August 5, 2024. A304. On September 23, 2024, the CFTC filed a motion for summary judgment. CSA 116-46. The parties completed briefing on summary judgment on January 24, 2025. ECF 428, 436. At the time of this filing, the District Court has not ruled on the motion for summary judgment.

### 3. Appointment of the Receiver and Recovery of EminiFX Assets

On May 11, 2022, the District Court entered a SRO, which ordered the freezing of the Defendants' assets, prohibited them from destroying books and records, provided the CFTC access to the Defendants' books and records, and

appointed a temporary receiver, David Castleman of Raines Feldman LLP ("Receiver"), to take full powers of an equity receiver over EminiFX and "all customer funds and property and other assets traceable to customers in the possession of or under the control of Eddy Alexandre." CSA 9-16. On June 15, 2022, the District Court entered a Consent Order for Preliminary Injunction against the Defendants, which appointed the Receiver permanently with all directions, authorizations, duties, and powers granted under the SRO and continued the existing asset freeze. CSA 43-47.

The Receiver recovered nearly $61 million in cash and additional significant amounts of cryptocurrency. CSA 82. On December 9, 2022, the Receiver moved for approval to liquidate the estate's cryptocurrency assets upon providing the court with feedback from the customers of the proposed liquidation. CSA 54-59. On December 21, 2022, the Receiver provided the customers' responses concerning the proposed liquidation. A142-43. On January 4, 2023, the District Court approved the Receiver's request to liquidate the recovered cryptocurrency expeditiously because of the highly volatile nature of cryptocurrencies. CSA 60-61. Accordingly, the Receiver liquidated the recovered cryptocurrency between January and April 2023 for over $90 million. CSA 82. In total, the Receiver

recovered $153 million in assets to distribute to participants.[2] CSA 83. Acluche did not attempt to intervene until about a year after the Receiver moved to liquidate the cryptocurrency assets.

### 4. Claims Process for Distribution of Receivership Assets

The Receiver set up a process for participants in EminiFX and others with claims against the Defendants to assert claims against the receivership estate. CSA 83-84.

> ·**Ledger**: Using a database used to maintain EminiFX customer account records and the various bank and cryptocurrency financial records in the database, the Receiver constructed a ledger to document the overall financial condition of EminiFX and the contributions and withdrawals that were made to and from user accounts. CSA 83-84.

> ·**Claims Process**: On August 29, 2023, the District Court approved the Receiver's proposed process for customers to file claims for distributions from the receivership estate and to dispute the transaction information in the ledger. CSA 83. The Receiver developed a portal available to customers that displayed the deposits and withdrawals associated with their accounts.

> ·**Dispute Initiation Process**: The Receiver's portal allowed customers to review that information and verify or dispute the information provided by February 26, 2024. CSA 84. By that deadline, about 25,758 customers had verified or disputed the transactions listed for their accounts. CSA 84. Over 5,600 EminiFX participants disputed one or more transactions identified by the Receiver. CSA 84.

> ·**Dispute Resolution and Notice to Court and Customers**: The Receiver asked participants who disputed the listed transactions to provide evidence to corroborate their claim. CSA 151. The Receiver then reviewed the disputed transactions and, thereafter, filed a notice with the court detailing

---

[2] The Receiver recovered a few million dollars' worth of real estate, vehicles, and office property as part of the $153 million in recovered assets. CSA 83.

the results of all disputed and verified transactions. CSA 153. The Receiver also provided results of his review to the portal, which allowed each customer to view them. CSA 153.

·**Objections to Dispute Resolution**: The participants could then accept the proposed resolution or provide additional information to corroborate their claim by December 16, 2024. CSA 153, 157. The Receiver would then work to settle all remaining disputed transactions and, for those that cannot be resolved, would submit the claims objections to the District Court for the court to resolve. CSA 157.

·**Distribution Plan**: On August 9, 2024, the Receiver filed a motion for approval of a distribution plan. *See* CSA 62-115. Because the amount of assets recovered by the Receiver was over $100 million less than the $260 million deposited by EminiFX participants, the Receiver proposed to distribute the funds to claimants on a *pro rata* basis. CSA 72-73, 88-89.

·**Plan Approval and Distribution**: On January 21, 2025, the District Court approved the Receiver's distribution plan. CSA 158-78. The Receiver conducted an initial distribution of funds in early February 2025. CSA 180.

### 5. Acluche's Attempts to Intervene

Pierre Acluche was a participant in EminiFX. Since December 2023,

Acluche has sought to intervene in the CFTC's enforcement action against the

Defendants on behalf of a group of EminiFX customers on several occasions.[3]

A239. On December 14, 2023, Acluche filed a letter requesting the court to allow

him and several other participants to intervene under Federal Rule of Civil

---

[3] Other EminiFX customers had filed several letters requesting intervention in the action in August 2022, which the District Court denied and struck on August 12, 2022 because the customers failed to request intervention in a motion and because they could bring their grievances through the Receiver. ECF 106. The District Court denied and struck several more customer letters on September 21, 2022 and October 17, 2022. ECF 162, 166.

Procedure ("FRCP") 24 because of their substantial interests in the case. A239-40. The District Court denied the request on December 18, 2023, because the letter was not properly filed as a motion and Acluche had failed to provide more than conclusory allegations that he had a right to intervene. A241.

On January 18, 2024, Acluche filed a motion to intervene as of right and by permission under FRCP 24, claiming that his interests in the case were not adequately represented by the parties. A247. Acluche cited the liquidation of the receivership estate's cryptocurrency holdings, which he claimed was done prematurely at an undervalued price. A251. The CFTC opposed the motion, arguing that the CFTC adequately represented the customers' interests and that the motion came too late. A257. On February 14, 2024, the District Court denied the motion, holding that the participants' interests were adequately represented because the CFTC had initiated the case to recover assets for the defrauded victims and the Receiver was recovering assets for distribution, which involved investigating claims and receiving feedback from customers. A254-60. The court acknowledged Acluche's disagreement with the cryptocurrency liquidation but determined that the Receiver's different strategy for preserving the assets did not show that the customers' interests were not adequately represented. A259-60.

On May 12, 2024, Acluche again filed a letter with the court seeking to intervene on behalf of himself and a group of customers. A274. On May 14, 2024,

11

the court treated the letter as a motion to reconsider the previous motion to intervene and denied the request. A289. On July 19, 2024, Acluche again moved to intervene. On July 30, 2024, the District Court denied the motion for the previously stated reasons and ordered the motion to be stricken. A303.

### 6. The Ruling on Review: Acluche's Fifth Attempt to Intervene

On January 27, 2025, Acluche filed another motion on behalf of himself and a group of customers to intervene as of right or by permission under FRCP 24, again arguing that his interests were not adequately represented.[4] A362. This motion came two years after the Receiver's request to liquidate, and almost two years after the liquidation concluded. On January 30, 2025, the District Court denied the motion for the reasons provided in the previous orders, determining that Acluche provided no new arguments than those he had previously raised and that the court had already rejected.[5] A371.

On February 20, 2025, Acluche filed a notice of interlocutory appeal of the order denying the January 27, 2025 motion to intervene. A417.

---

[4] Though Acluche did not explain his reasoning for intervention in the appealed motion, he cites the Receiver's liquidation of the cryptocurrency assets as justification for his intervention in his appellant brief. *See* Br. 7, 10, 19.

[5] The CFTC had not yet filed its response to the motion. The court denied the motion before the 14-day deadline to respond. *See* SDNY Local Rule 6.1(b).

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's denial of Acluche's January 27, 2025 motion to intervene. Acluche filed the pertinent motion during the final stages of the litigation, after the Receiver began distributing the estate assets to claimants and after the parties completed summary judgment briefing, which made the motion untimely. Even if the motion was timely, Acluche's and all other EminiFX customers' interests were already adequately represented by the CFTC and the Receiver, which had brought the action to recover the customers' deposits, and all customers could present their positions to the District Court through the Receiver's claims process. Further, the District Court appropriately considered Acluche's arguments in his motion to intervene and properly denied it without a hearing because the motion presented the same unpersuasive arguments provided in the previous motions to intervene. For these reasons, this Court should affirm.

## ARGUMENT

### I. Standard of review.

This Court reviews a district court's denial of a motion to intervene as of right for abuse of discretion. *In re N.Y. City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022). A district court's ruling is an abuse of discretion if it (1) is based on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) cannot be located within the

13

range of permissible decisions. *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010). This review is "deferential" to the district court's decision making. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006). The abuse of discretion standard for reviewing motions to intervene is "particularly" appropriate "in government enforcement actions." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 991 (2d Cir. 1984).

Acluche cites an unpublished district court decision to suggest that this circuit reviews denials of motions to intervene *de novo*. Br. 11 (citing *Briscoe v. City of New Haven*, No. 3:09-CV-1642 (CSH), 2012 WL 13026762, at *11 (D. Conn. Oct. 5, 2012)). This Court is "of course, not bound by [an unpublished district court]'s conclusion." *United States v. Ragonese*, 47 F.4th 106, 112 (2d Cir. 2022). Further, the decision cited by Alcluche does not rely on any authority from this Court to support its statement that the standard of review is *de novo*, *Briscoe*, 2012 WL 13026762, at *11, nor does there appear to be any holding from this Court indicating that it has departed from abuse of discretion review. Accordingly, Acluche's contention is not persuasive.

## II. Acluche did not have a right to intervene in the CFTC's enforcement action.

Acluche appeals the District Court's denial of his attempt to intervene in the CFTC's enforcement action against Eddy Alexandre under FRCP 24(a). To successfully intervene as of right, a movant must "(1) timely file an application, (2)

show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) (citing Fed. R. Civ. P. 24(a)). A motion to intervene as of right fails if the movant does not satisfy all four requirements. *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003).[6] Alcluche failed to satisfy at least two requirements, and thus, there is no ground for reversal.

### A. Alcluche's motion to intervene was not timely.

The appealed motion, which Alcluche filed more than two years after the CFTC commenced its enforcement action against Alexandre, was not timely. Moreover, while Alcluche sought to intervene because he was dissatisfied with the Receiver's liquidation of the estate's digital assets, the appealed motion was filed more than one year after the District Court approved the Receiver's request to liquidate the estate's digital assets. A362, CSA 60. Whether a motion to intervene is timely depends on "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual

---

[6] The CFTC takes no position regarding whether Alcluche has an interest in the action or whether that interest may be impaired by the disposition of the action.

15

circumstances militating for or against a finding of timeliness." *In re Bank of N.Y. Derivative Litig.*, 320 F.3d at 300 (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)). The question of timeliness considers the "totality of the circumstances" of the motion. *Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1043-44 (2d Cir. 1988). None of these factors favored granting Acluche's appealed motion to intervene.

Acluche argues that his motion was timely because the enforcement action was delayed with various stays until February 15, 2024 and that he had attempted to intervene at the "first opportunity" on December 14, 2023. Br. 12 (citing ECF 240); *see* A239. Acluche claims that the existing parties would not be prejudiced by his intervention because the Receiver has already begun distribution of the receivership estate and that the distribution "would not substantially change" if Acluche intervened. Br. 13. Acluche adds that the "exceptional dissipation" of receivership assets and the District Court's "failure" to "rectify the situation" constitutes unusual circumstances to support the intervention. Br. 13.

These points fail to demonstrate that the appealed motion to intervene was timely filed. First, the pertinent motion to intervene is the January 27, 2025 motion, the denial of which Acluche appealed, not the December 14, 2023 letter that he had filed requesting intervention and that was denied on February 14, 2024. A239, A254, A362. The denied motion for this Court's review, the January 27, 2025

16

motion, was filed after the parties had completed all summary judgment briefing. A371, ECF 436. Even if Acluche's December 14, 2023 letter was the pertinent motion to intervene, it came eleven months after the court approved the Receiver's request to liquidate the recovered cryptocurrency on January 4, 2023. CSA 60. Accordingly, well before Acluche began his efforts to intervene, the Receiver had notified the customers of the plans to sell the estate's Bitcoin (the action that Acluche claims caused him to seek intervention), received their feedback on the plans, and then provided their responses to the District Court. CSA 60-61.

Second, the CFTC, the Receiver, and Alexandre would all be prejudiced if Acluche was able to intervene in the action. Before Acluche appealed the denial of his motion to intervene, the parties had already briefed summary judgment, and the Receiver had his distribution plan approved and began making distributions to participants. CSA 158, CSA 179, ECF 436. Acluche's intervention this late in the litigation would only serve to delay the resolution of the action. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994) (holding intervention should not cause a case to "becom[e] unnecessarily complex, unwieldy or prolonged").

Third, the denial of the motion to intervene did not prejudice Acluche. Acluche sought intervention in the litigation to dispute the Receiver's management of the estate, not to participate in the merits of the enforcement action. *See* A251. Acluche, as a participant in EminiFX and a recipient of the Receiver's distributions

17

from the estate, has been able to participate in the receivership process throughout the litigation. The Receiver provided notice and an opportunity for feedback on his plan to liquidate the Bitcoin assets, which he then provided to the court for approval of his plan. CSA 55, 60. The Receiver also set up a thorough claims process, in which customers had multiple opportunities to review and dispute payment information presented by the Receiver and, if a dispute could not be settled, the Receiver would present the disputes to the court for resolution. CSA 83-85, 94. Acluche fails to establish how his intervention as a party would meaningfully change his ability to challenge the Receiver's actions.

Last, Acluche fails to show any unusual circumstances that would justify the timeliness of his intervention. The District Court's denials of his attempts to intervene and the CFTC's lack of opposition to the Receiver's actions are irrelevant to whether his motion was timely filed. The Receiver's actions in managing the receivership, which involved liquidating volatile assets to protect the value of the estate, are far from an "exceptional dissipation." Accordingly, Acluche did not timely file the motion.

## B. Acluche's interests are adequately represented in the litigation.

Acluche fails to show that his interests were not already adequately represented in the enforcement action. The movant must make a particularly strong showing of inadequacy in a case where the government is enforcing the law. *See*

18

*United States v. City of N.Y.*, 198 F.3d 360, 367 (2d Cir. 1999); *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236 (2d Cir. 1972). The CFTC here is enforcing the CEA on behalf of defrauded customers, including Acluche, so intervention is therefore strongly disfavored.

Acluche cites a Sixth Circuit case in support of his contention that the burden to show inadequacy of representation is "minimal" and only requires showing the representation "'may be' inadequate." Br. 20 (quoting *Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000)). However, this Circuit requires a "more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). Representation is adequate if the proposed intervenor and the existing party favor different strategies to achieve the same goal. *City of N.Y.*, 198 F.3d at 367. Here, the Receiver, the CFTC, and Acluche all share the same interest of returning the money that EminiFX customers transferred to the Defendants. Thus, Acluche must make a strong showing that his interests are not protected adequately by the parties to the action. This he fails to do.

Acluche claims that the Receiver's decision to liquidate the Bitcoin assets demonstrates that the CFTC and Receiver have failed to represent the customers' interests. Br. 18. Acluche states that the Receiver sold Bitcoin at about half the

value it had at the start of EminiFX and did not hire experts to advise on the

management of the cryptocurrency, causing the customers financial harm. Br. 19.

Acluche's argument is misplaced for two reasons.

First, the CFTC and the Receiver have been adequately representing

Acluche and all other customers' interests in the action. Government agencies that

bring enforcement actions, such as the CFTC, "act in the interest of maximizing

the recovery to all defrauded individuals and therefore, are often presumed to be

adequately representing the interests of non-party investors." *SEC v. Callahan*, 193

F. Supp. 3d 177, 206 (E.D.N.Y. 2016). The CFTC filed this action to recover the

assets that the Defendants fraudulently acquired from the customers, and the

Receiver has made diligent efforts to obtain and distribute those assets to the

customers in a reasonable manner. Accordingly, the existing parties are already

adequately representing Acluche's interests.

Second, Acluche and customers have had the opportunity to challenge the

Receiver's actions throughout the entire litigation and, thus, adequately represent

their own interests. The Receiver set up a robust claims process that allows

claimants to review and dispute the Receiver's payment details and distribution

plans, which, if not resolved between the Receiver and customer, are sent to the

District Court to review and resolve. CSA 83-85, 94. Importantly here, the

Receiver gave notice to the customers prior to liquidating the Bitcoin, gave them

20

an opportunity to submit feedback on the plans, and then provided the feedback to the District Court before the court authorized the liquidation. A142-143, CSA 60.

If a non-party claimant receives notice of the Receiver's proposed action and can present their opposition to the court, there is no further need for them to intervene as a party in the action. *See SEC v. Charles Plohn & Co.*, 448 F.2d 546, 549 (2d Cir. 1971). Other circuits have held that similar receivership claims processes that allow claimants to file claims with a receiver for the district court's review give the claimants adequate representation in the litigation and, therefore, make their intervention unnecessary. *CFTC v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584, 586-87 (10th Cir. 1984); *CFTC v. Heritage Cap. Advisory Servs., Ltd.*, 736 F.2d 384, 387 (7th Cir. 1984). Indeed, Acluche fails to articulate how his intervention as a party in the litigation would allow him to better represent his interests in the litigation. Accordingly, the District Court did not abuse its discretion in denying the motion to intervene.

**III.  Acluche was not entitled to a hearing on his motion to intervene, and the District Court's analysis of the issue was satisfactory.**

Acluche argues that the District Court committed reversible error by not holding a hearing on his motion to intervene and seems to allege that the court did not sufficiently consider whether Acluche's interests were already adequately represented. Br. 13-14. Acluche contends that the court relied on conclusory

21

statements that the CFTC adequately represented the customers' interests to support its decision. Br. 14. This argument fails for several reasons.

First, a district court is not required to hold a hearing on a motion to intervene if the motion itself does not sufficiently show that intervention is warranted. *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986); *see also* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1914 (3d ed. 2024). If a movant fails to provide non-conclusory factual allegations in the motion that, if taken as true, establishes the movant is entitled to intervene, the court can resolve the issue without holding a hearing. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001); *Jones v. Caddo Par. Sch. Bd.*, 704 F.2d 206, 222 (5th Cir. 1983).

Acluche's motion to intervene failed to provide sufficient factual allegations to plausibly establish that he had a right to intervention. When arguing that his motion was timely filed, Acluche stated that no answer had been filed and that the litigation was in its early stages. A365. This was factually incorrect. Acluche filed the motion on January 27, 2025, after Alexandre had filed his answer to the CFTC's complaint on August 5, 2024, and the parties had fully briefed summary judgment in accordance with the District Court's briefing schedule. A304, A362, ECF 436. These allegations appear to have been lifted from his two previous motions to intervene. *See* A249, A251, A274, A277. Acluche's failure to provide

22

correct information about the action's procedural history demonstrates that his motion was fundamentally flawed. When arguing that he had a substantial interest in the litigation and that his interests were inadequately represented, Acluche failed to provide any factual allegations in support of his assertion. A365-366.

Acluche also failed to provide any new substantive argument supporting intervention, after the court had already denied his several previous motions to intervene. The court had already considered and denied the arguments Acluche presented in the appealed motion to intervene, and Acluche does not explain how a hearing on the motion would produce a different result than the previous attempts to intervene. A243, A258-260, A289, A303. The court was therefore justified in summarily denying a motion that was facially insufficient without a hearing.

Second, the District Court did not rely on conclusory statements to deny Acluche's several motions to intervene. Acluche claims that the court only stated that "the EminiFX Investors' interests are adequately represented by the CFTC" to support denying intervention. Br. 14. In the court's denial of Acluche's initial motion to intervene, which it adopted as its reasoning in the appealed order denying intervention, the court provided a robust analysis of whether he had a right to intervene in the CFTC's action. A380. In the order, the court explained that the CFTC was well-equipped to represent all EminiFX's participants' interests because the CFTC initiated the suit to recover assets for the victims, obtained an

23

appointment of a Receiver who has worked to recover those assets and has a fiduciary duty to fairly distribute them, and worked towards resolution of the case. A258. The court also responded to Acluche's disapproval of the Receiver's liquidation of the Bitcoin holdings, noting that it understood his concerns but agreed with the Receiver's decision to reduce the estate's exposure to volatile assets. A259. Therefore, Acluche's criticism of the court's analysis is groundless.

Acluche cites caselaw that he claims affirms his argument that he was entitled to a hearing. However, the cited cases do not offer any support to his claim. First, Acluche quotes language from *In re Katz*, 623 F.2d 122, 125 (2d Cir. 1980), in which this Court ordered a remand on a denial of a motion because a district court "considered that a factual hearing was unnecessary" on a motion and thus "denied the opportunity to satisfy [the movant's] burden." Br. 14-15. However, this Court was discussing the lack of a factual hearing for a *motion to quash* a subpoena for testimony from an attorney based on attorney-client privilege, not a motion to intervene. *In re Katz*, 623 F.2d at 123-24. In *Katz*, a client of an attorney moved both to intervene and to quash a subpoena for testimony from the attorney. *Id.* Because the district court did not hold a factual hearing on the "claimed privilege," which "depends upon the facts and circumstances of each case," this Court held it had "denied the [movant the] opportunity to satisfy his burden" to prove the privilege applied for the motion to

24

quash. *Id.* at 125, 126. However, this Court in *Katz* did not discuss any issue with the lack of a factual hearing for the motion to intervene. Accordingly, *Katz* provides no support for Acluche's contention.

Acluche next cites *Laroe Estates, Inc. v. Town of Chester*, in which this Court vacated and remanded a denial of a motion to intervene because the factual record at the time of the motion to intervene was undeveloped where, in the district court's decision, the court did not discuss whether the movant had a right to intervene because it determined they did not have standing. *Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 62 (2d Cir. 2016). This Court held that intervenors do not need to prove standing and therefore that the district court should have addressed the motion to intervene. *Id.* at 65. This Court, however, did not take any issue with a lack of a factual hearing on the motion to intervene and vacated the denial of the motion only because the district court needed to address its merits before this Court could rule on it. *Id.* at 66-70. Here, the District Court analyzed the merits of Acluche's motion to intervene, and, therefore, the record is sufficiently developed to allow this Court to rule on appeal. Accordingly, *Laroe* also provides no support for Acluche's contention.

Acluche then invokes the Supreme Court's *Loper Bright* decision to argue that the District Court mistakenly deferred to the CFTC in its analysis of the motion to intervene. Br. 16. The *Loper Bright* decision, however, concerned the

appropriate deference a court should give to an agency's interpretation of a statute. *Avon Nursing & Rehab. v. Becerra*, 119 F.4th 286, 292 (2d Cir. 2024) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391 (2024)). The District Court did not conduct any statutory interpretation or defer to a statutory interpretation offered by the CFTC for any of Acluche's motions to intervene. *Loper Bright* is therefore irrelevant to the denial of the motion to intervene.

Last, Acluche suggests that this Court has held that ruling on a motion to intervene without a hearing is an abuse of discretion because it is often a fact-intensive process. Br. 16-17 (quoting *Floyd v. City of N.Y.*, 770 F.3d 1051, 1057 (2d Cir. 2014)). The quoted language from the cited case, however, only describes the rationale for the deferential standard of review, and the opinion never stated that factual hearings were required for all motions to intervene. *See Floyd*, 770 F.3d at 1057 ("*Because of the fact-intensive nature of an intervention decision*, we review for 'abuse of discretion' a district court's order denying intervention.") (emphasis added). This Court defers to a district court's ruling on a motion to intervene is because "it has the advantage of having a better 'sense' of the case than" an appellate court because "of the variety of factual circumstances that face a district court called upon to decide whether to grant or deny a motion to intervene, and the close proximity of that court to the case's nuances." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994). Accordingly, the District Court has a

26

better sense of how to address a motion to intervene, which here did not require a

factual hearing after Acluche had filed the same motion many times before.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's

denial of the motion to intervene.

Respectfully submitted,

Meghan Tente
  *Acting General Counsel*
Anne Stukes
  *Acting Deputy General Counsel*
Conor Daly
  *Counsel*
*/s/ Conor Daly*
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
(202) 834-9752
cdaly@cftc.gov

27

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30 day of June 2025, I have caused a copy of the

foregoing to be served on counsel of record through the Court's CM/ECF system.

I further certify that I caused two copies of the foregoing to be sent by FedEx

Priority Overnight upon the following:

      Pierre Acluche
      905 Hines Avenue
      Lehigh Acres, FL 33972

Additionally, I caused six copies of the foregoing to be sent by FedEx Priority

Overnight, to:

            Office of the Clerk
            Thurgood Marshall United States Courthouse
            40 Foley Square
            New York, NY 10007


Dated: June 30, 2025                   */s/ Conor Daly*
                                   Conor Daly

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that, pursuant to Fed. R. App. 32(a)(7)(B) and Local Rule 32.1, the foregoing brief complies with the type-volume limitations, in that it has 6411 words, excluding the parts of the brief, such as table of authorities, exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in proportionally spaced typeface using Microsoft Word 2013 and is set in 14-point sized Times New Roman type style.

By:

*/s/ Conor Daly*
Conor Daly
*Counsel*
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
(202) 834-9752
cdaly@cftc.gov

Dated: June 30, 2025