**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 25-632

Caption [use short title]

Motion for: Leave to Supplement the Record and

for Judicial Notice of DOJ Memorandum

CFTC V. Alexandre, Acluche

Set forth below precise, complete statement of relief sought:

Appellant requests leave to supplement the record w

April 7, 2025 Memorandum issued by the Deputy At

of the United States titled Ending Regulation By Pro

and for judicial notice of the policy statements conta

MOVING PARTY: Pierre Acluche (Pro Se)          OPPOSING PARTY: CFTC

☐ Plaintiff          ☐ Defendant

■ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: Pierre Acluche (pro se)       OPPOSING ATTORNEY: Margaret Aisenbrey

[name of attorney, with firm, address, phone number and e-mail]

905 Hines Avenue                     Commodity Futures Trading Commission

Lehigh Acres, FL 33972               1155 21st Street, NW Washington DC 20581

pmacluche@gmail.com (239) 297-6209   maisenbrey@cftc.gov (816) 960-7749

Court- Judge/ Agency appealed from: SDNY - Judge Valerie E. Caproni

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
■ Yes ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed ■ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
■ Yes ☐ No ☐ Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:

Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No

Requested return date and explanation of emergency: _____
_____
_____

Is the oral argument on motion requested? ☐ Yes ■ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ■ No  If yes, enter date: _____

Signature of Moving Attorney:

_Pierre Acluche_  Date: 2/20/2026    Service : ■ Electronic ■ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 25-632

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

COMMODITY FUTURES TRADING COMMISSION,

*Plaintiff-Appellee,*

v.

EDDY ALEXANDRE AND EMINIFX, INC.,

*Appellant*,

UNITED STATES OF AMERICA,

*Intervenor*.

On Appeal from the United States District Court
for the Southern District of New York
(No. 1:22-cv-03822-VEC) (Hon. Valerie Caproni)

MOTION FOR LEAVE TO SUPPLEMENT THE RECORD AND FOR
JUDICIAL NOTICE ON DOJ MEMORANDUM

Pierre Acluche
EminiFX Investors
*Pro se*
905 Hines Ave
Lehigh Acres, Fl 33972
(239) 297-6209
pmacluche@gmail.com

*INTRODUCTION*

Pursuant to Federal Rule of Appellate Procedure 27 and Second Circuit Local Rule 27.1, Appellant Pierre Acluche respectfully moves this Court:

1. To supplement the record with an April 7, 2025 Memorandum issued by the Deputy Attorney General of the United States Todd Blanche titled "*Ending Regulation By Prosecution*" (DOJ memorandum); and

2. To take judicial notice of the policy statements contained therein pursuant to Federal Rule of Evidence 201.

The memorandum is attached as **Exhibit 1** and is publicly available through the U.S. Department of Justice.

The memorandum is necessary for the proper determination of issues central to this appeal demonstrating the substantial mismanagement of EminiFX's cryptocurrency assets by Receiver and the continued timeliness of intervention due to actions by Receiver.

*BASIS FOR SUPPLEMENTATION AND FOR JUDICIAL NOTICE*

## I. AUTHORITY TO SUPPLEMENT THE RECORD AND FOR JUDICIAL NOTICE

Under FRAP 27 and Local Rule 27.1, this Court may act on motions necessary to aid its review, including motions to supplement the record where fairness and justice require.

Federal appellate courts routinely grant supplementation where materials clarify issues related to subject-matter jurisdiction, standing, timeliness, prejudice, or adequacy of representation. The Second Circuit has recognized that supplementation is proper where the record is incomplete or where justice so requires. See, e.g., *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37 (2d Cir. 1975). See, also *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000).

Courts may also take judicial notice of official government publications and policy memoranda not subject to reasonable dispute. Fed. R. Evid. 201(b).

The DOJ memorandum qualifies as:

- An official federal government document;

- Publicly issued by the Office of the Deputy Attorney General;

- Not subject to reasonable dispute; and

- Relevant to the policy and regulatory environment governing digital asset enforcement actions during the period at issue.

2

The requested supplementation and taking judicial notice satisfy all such criteria.

## II.   THE DOJ MEMORANDUM DIRECTLY ADDRESSES THE DIGITAL ASSET COLLAPSES OF 2022

The memorandum explicitly recognizes that:

> "Following the prolonged period of price decline in the digital asset market in 2022, multiple companies with custody of investors' digital assets collapsed and entered bankruptcy, including FTX, Voyager Digital, Celsius Network, Genesis Global, BlockFi, and Gemini Trust."

This language confirms that the federal government itself has acknowledged:

- The 2022 market-wide collapse;

- The volatility environment during which enforcement actions and asset liquidations occurred;

- That the regulatory posture during that period was unsettled and controversial.

EminiFX was one of the remaining digital asset enforcement cases opened during that same 2022 period.

## III.   THE   MEMORANDUM   CONFIRMS   THAT   PREMATURE

3

## VALUATION AND LIQUIDATION OF DIGITAL ASSETS CAUSES STRUCTURAL HARM TO INVESTORS

The DOJ memorandum further states:

> "The effect: digital asset investors' losses may be calculated at a value when the digital asset market was at a lower point, and victims who bore the risk of loss are unable to benefit from corresponding gains that occurred during or after the period in which they were victimized and would otherwise have possessed the asset."

This statement is directly on point.

That is precisely what occurred in the EminiFX Receivership:

- Digital assets were liquidated during a depressed market;

- Investors warned of the volatility cycle and potential recovery;

- The Receiver proceeded regardless;

- Subsequent market recovery occurred;

- Investors were deprived of appreciation they would otherwise have enjoyed.

4

The federal government has now formally acknowledged that this problem is systemic and harmful.

## IV. THIS SUPPORTS APPELLANT'S ARGUMENT THAT THE DISTRICT COURT ERRED IN DISMISSING INVESTOR CONCERNS

Appellant and other investors repeatedly raised concerns that:

- Cryptocurrency markets are cyclical;

- Forced liquidation during a bear market destroys value;

- Digital asset economics differ from traditional assets;

- Sophisticated understanding of blockchain asset management was required.

The Receiver nevertheless:

- Liquidated assets prematurely;

- Failed to meaningfully consider market rebound risk;

- Failed to meaningfully engage investors;

- Proceeded without demonstrating adequate digital asset expertise.

The DOJ memorandum confirms that:

1. The regulatory environment during 2022 was unstable and policy-driven;

2. Digital asset valuation during depressed markets results in investor harm;

3. The federal government has recognized this valuation flaw;

4. The harm described is precisely the harm suffered here.

The district court's refusal to consider investor objections and its denial of intervention occurred without acknowledging that this risk was already widely known and now formally recognized at the highest levels of the Department of Justice.

## V.   THE MEMORANDUM SUPPORTS THE NECESSITY OF INTERVENTION

Here, however:

- The Receiver acted without sufficient understanding of digital asset economics;

- The court deferred to that action;

- Investors were excluded;

6

- Estate value was materially reduced.

The memorandum supports the conclusion that investor concerns about digital asset liquidation were legitimate, economically grounded, and policy-recognized.

This strengthens Appellant's argument that intervention should have been granted so that investors could:

- Present expert evidence;

- Challenge liquidation timing;

- Protect the estate from avoidable dissipation.

*CONCLUSION*

For the foregoing reasons, Appellant respectfully requests that this Court:

- Grant leave to supplement the record with the attached DOJ memorandum;

- Take judicial notice of its contents; and

- Consider it in evaluating the adequacy of representation, timeliness, and the propriety of denying investor intervention.

Dated: February 20, 2026

Respectfully submitted,

7

Pierre Acluche
EminiFX Investors
*Pro se*
905 Hines Ave
Lehigh Acres, Fl 33972
(239) 297-6209
pmacluche@gmail.com

### Certificate of Compliance

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32(a), I hereby certify that the foregoing brief was produced using the Times New Roman 14-point typeface and contains 847 words.

# EXHIBIT 1



**U.S. Department of Justice**

Office of the Deputy Attorney General

---

The Deputy Attorney General

*Washington, D.C. 20530*

April 7, 2025

MEMORANDUM FOR ALL DEPARTMENT EMPLOYEES *[signature]*

FROM:                    THE DEPUTY ATTORNEY GENERAL

SUBJECT:            Ending Regulation By Prosecution

      The digital assets industry is critical to the Nation's economic development and innovation. Thus, as noted in Executive Order 14178, clarity and certainty regarding enforcement policy "are essential to supporting a vibrant and inclusive digital economy and innovation in digital assets." President Trump has also made clear that "[w]e are going to end the regulatory weaponization against digital assets."

      The Department of Justice is not a digital assets regulator. However, the prior Administration used the Justice Department to pursue a reckless strategy of regulation by prosecution, which was ill conceived and poorly executed. The Justice Department will no longer pursue litigation or enforcement actions that have the effect of superimposing regulatory frameworks on digital assets while President Trump's actual regulators do this work outside the punitive criminal justice framework. Rather, consistent with President Trump's directives and the Justice Department's priorities, the Department's investigations and prosecutions involving digital assets shall focus on prosecuting individuals who victimize digital asset investors, or those who use digital assets in furtherance of criminal offenses such as terrorism, narcotics and human trafficking, organized crime, hacking, and cartel and gang financing.[1]

### I.  Digital Assets Enforcement Priorities

      Executive Order 14178 tasks the Justice Department and others with "protecting and promoting" (1) "the ability of individual citizens and private-sector entities alike to access and use for lawful purposes open public blockchain networks without persecution"; and (2) "fair and open access to banking services for all law-abiding individual citizens and private-sector entities alike." In response to those taskings, the Justice Department will stop participating in regulation by prosecution in this space. Specifically, the Department will no longer target virtual currency exchanges, mixing and tumbling services, and offline wallets for the acts of their end users or unwitting violations of regulations—except to the extent the investigation is consistent with the priorities articulated in the following paragraphs.

---

[1] This guidance is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

Memorandum from the Deputy Attorney General                                              Page 2
Subject: Ending Regulation By Prosecution

The policy outlined in Executive Order 14178 requires the Justice Department to prioritize investigations and prosecutions that involve conduct victimizing investors, including embezzlement and misappropriation of customers' funds on exchanges, digital asset investment scams, fake digital asset development projects such as rug pulls, hacking of exchanges and decentralized autonomous organizations resulting in the theft of funds, and exploiting vulnerabilities in smart contracts. Such enforcement actions are important to restoring stolen funds to customers, building investor confidence in the security of digital asset markets, and the growth of the digital asset industry.

Pursuant to the "total elimination" policy set forth in Executive Order 14157, entitled *Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists*, the Justice Department will also prioritize cases involving use of digital assets in furtherance of unlawful conduct by cartels, Transnational Criminal Organizations, Foreign Terrorist Organizations, and Specially Designated Global Terrorists. For example, cartels and human trafficking and smuggling rings have increasingly turned to digital assets to fund their operations and launder the proceeds of their illicit businesses. The same is true of fentanyl production: increasingly dangerous precursors purchased from China and used in the production of fentanyl in Central and South America are often paid for using digital assets. Terrorist groups, such as Hamas and ISIS, and nation states subject to US sanctions, like North Korea, also continue to transact using digital assets in an attempt to conceal their financing from law enforcement. As part of the Justice Department's ongoing work against fentanyl trafficking, terrorism, cartels, and human trafficking and smuggling, the Department will pursue the illicit financing of these enterprises by the individuals and enterprises themselves, including when it involves digital assets, but will not pursue actions against the platforms that these enterprises utilize to conduct their illegal activities.

Ongoing investigations that are inconsistent with the foregoing should be closed. The Office of the Deputy Attorney General will work with the Criminal Division and EOUSA to review ongoing cases for consistency with this policy. All previously issued policies and directives that are inconsistent with any of the foregoing are rescinded, effective today.

## II.    Digital Assets Charging Considerations

Based on the foregoing priorities—while charging decisions must be based upon the facts and evidence of each particular case—federal prosecutors are directed to consider the following factors when deciding whether to pursue criminal charges involving digital assets:

Prosecutors shall prioritize cases that hold accountable individuals who (a) cause financial harm to digital asset investors and consumers; and/or (b) use digital assets in furtherance of other criminal conduct, such as fentanyl trafficking, terrorism, cartels, organized crime, and human trafficking and smuggling. Seeking accountability from individuals who perpetrate these types of wrongdoing deters future illegal activity, compensates victims, and promotes the public's confidence in the digital asset markets and broader industry. On the other hand, criminal matters premised on regulatory violations resulting from diffuse decisions made at lower levels of digital asset companies often fail to advance the priorities of the Department.

Prosecutors should not charge regulatory violations in cases involving digital assets—including but not limited to unlicensed money transmitting under 18 U.S.C. § 1960(b)(1)(A) and (B), violations of the Bank Secrecy Act, unregistered securities offering violations, unregistered

broker-dealer violations, and other violations of registration requirements under the Commodity Exchange Act—unless there is evidence that the defendant knew of the licensing or registration requirement at issue and violated such a requirement willfully. This priority is not required by law, but is being imposed as a matter of discretion, in recognition of the Justice Department's priorities and the fact that the Biden Administration created a particularly uncertain regulatory environment around digital assets.[2]

Prosecutors should not charge violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Commodity Exchange Act, or the regulations promulgated pursuant to these Acts, in cases where (a) the charge would require the Justice Department to litigate whether a digital asset is a "security" or "commodity," and (b) there is an adequate alternative criminal charge available, such as mail or wire fraud. The following types of positions are permissible under this policy in connection with proposed prosecutions that would otherwise be consistent with the guidance in this memorandum: (i) taking the position that bitcoin or ether is a "commodity" under the Commodity Exchange Act; and (ii) filing securities fraud charges where the "security" at issue is the equity or stock in a digital asset company. Any exceptions to this policy must be approved by the Deputy Attorney General, or his designee(s). Relevant considerations for such an exception include whether the digital asset is widely accepted to be a "security" or "commodity," whether the parties to the litigation have an interest in defending the position that a digital asset is a "security" or "commodity," and whether there is no alternative criminal charge under Title 18.

### III.    Compensating Victims In The Digital Assets Space

Following the prolonged period of price decline in the digital asset market in 2022, multiple companies with custody of investors' digital assets collapsed and entered bankruptcy, including FTX, Voyager Digital, Celsius Network, Genesis Global, BlockFi, and Gemini Trust. In some instances, investor losses have been directly attributable to fraud and theft. In those cases, and others, prosecutors have been able to forfeit proceeds of criminal activity including digital assets that in some instances became worth billions of dollars. However, as a result of regulations, some digital asset investor victims have only been able to recover the value of their digital assets at the time the fraud was perpetrated. *See* 28 C.F.R. § 9.8(c). The effect: digital asset investors' losses may be calculated at a value when the digital asset market was at a lower point, and victims who bore the risk of loss are unable to benefit from corresponding gains that occurred during or after the period in which they were victimized and would otherwise have possessed the asset. Accordingly, the Office of Legal Policy and the Office of Legislative Affairs are directed to evaluate and propose legislative and regulatory changes to address this concern and improve asset-forfeiture efforts in the digital assets space.

---

[2] This guidance does not reflect a view by the Department that the criminal offense set forth in 18 U.S.C. § 1960 requires proof of willfulness in other contexts, and it casts no doubt on existing case law. Moreover, 18 U.S.C. § 1960(b)(1)(C) requires that the transmission of funds "are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity," and is therefore outside the scope of this policy.

Memorandum from the Deputy Attorney General                                            Page 4
Subject: Ending Regulation By Prosecution

### IV.    Shifting Resources Relating To Digital Assets

U.S. Attorneys' Offices will use long-recognized criminal justice tools to lead appropriate prosecutions consistent with the foregoing enforcement priorities and charging consideration. Consistent with the narrowing of the enforcement policy relating to digital assets, the Market Integrity and Major Frauds Unit shall cease cryptocurrency enforcement in order to focus on other priorities, such as immigration and procurement frauds. The National Cryptocurrency Enforcement Team (NCET) shall be disbanded effective immediately. The Criminal Division's Computer Crime and Intellectual Property Section (CCIPS) will continue to provide guidance and training to Department personnel and serve as liaisons to the digital asset industry.

### V.    The President's Working Group on Digital Asset Markets

The Justice Department will fully participate in President Trump's Working Group on Digital Asset Markets, which was established in Executive Order 14178, via attorneys designated by the Justice Department's senior leadership. As directed by President Trump, the Department's designees will identify and make recommendations regarding regulations, guidance documents, orders, or other items that affect the digital asset sector. Additionally, the Department will participate in the preparation of a report to President Trump recommending regulatory and legislative proposals that advance the policies and priorities set forth in the President's Executive Order. Following the submission of the report, the Justice Department will take all steps necessary to implement the recommendations in the report that President Trump adopts.

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Commodity Futures Trading Commiss

**CERTIFICATE OF SERVICE***

Docket Number: 25-632

v.

Alexandre et al

I, Pierre Acluche , hereby certify under penalty of perjury that
(print name)

on 2/20/2026 , I served a copy of Leave to Supplement the Record and
(date)
for Judicial Notice of DOJ Memorandum

(list all documents)

by (select all applicable)**

___ Personal Delivery    X United States Mail    ___ Federal Express or other
                                                     Overnight Courier

___ Commercial Carrier    X E-Mail (on consent)

on the following parties:

Margaret Aisenbrey    maisenbrey@cftc.gov

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| David Allen Castleman | dcastleman@otterbourg.com | | | |
| Name | Address | City | State | Zip Code |
| Eddy Alexandre | P.O. Box 1000 | White Deer | PA | 17887 |
| Name | Address | City | State | Zip Code |
| Benjamin Torrance | benjamin.torrance@doj.gov | | | |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

2/20/2026

Today's Date    Signature

Certificate of Service Form (Last Revised 12/2015)